## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| Bank of New York Mellon,<br><br>    Plaintiff,<br><br>    v.<br><br>Keyin Worth,<br><br>    Defendant. | No. 3:13-cv-1489 (MPS) |

### Rulings and Orders on Pending Motions

Pending before the Court are several motions filed by the parties in this matter between Plaintiff Bank of New York Mellon ("BNYM") and *pro se* Defendant Keyin Worth. I DENY Worth's Motions to Open and Vacate the Judgment (and other orders) (ECF Nos. 90, 91, 128) and DENY Worth's Motion to Dismiss (ECF No. 111) because the letters of rescission Worth purportedly sent to BNYM and other banks were untimely under the Truth in Lending Act. I DENY BNYM's Motion to Dismiss (ECF No. 110) in part because this Court possesses diversity jurisdiction over Worth's counterclaims and because I decline to dismiss those counterclaims simply due to Worth's failure to comply with the Court's instructions. I DENY as moot the remaining portion of BNYM's Motion to Dismiss – arising under Rule 12(b)(6) – because, finding no genuine issue of material fact with regard to Worth's counterclaims, I enter summary judgment on all counts asserted in the Second Amended Counterclaim Complaint in favor of BNYM. I DENY Worth's Motion for Recusal (ECF No. 122) because she cites no evidence of partiality other than the Court's previous rulings in this case. Finally, I DENY Worth's Motion for Stay (ECF No. 129) because her Notice of Appeal (ECF No. 125) is premature.

### I.     Procedural History

1

On October 19, 2013, Worth removed this foreclosure action from Connecticut Superior Court.  On March 18, 2015, the Court granted summary judgment in favor of BNYM, concluding that "BNYM has demonstrated it is the holder and owner of the Note and Mortgage at issue" and that Worth had defaulted on the mortgage agreement.  (ECF No. 58.)  Worth filed multiple motions to reconsider that order, which the Court denied on March 31, 2015.  (ECF No. 66.)  After an in-court hearing on April 9, 2015, the Court entered an order and judgment of strict foreclosure against Worth and denied her motions to recuse the undersigned, to quash, and to vacate the order granting summary judgment in favor of BNYM.  (ECF Nos. 77, 78.)  The Court ruled that its order and judgment of strict foreclosure was a final judgment "immediately appealable by the Defendant because there is no just reason for delay."  (ECF No. 77, at 2); *see* Fed. R. Civ. P. 54(b).  Worth appealed to the Second Circuit.  While that appeal was pending, Worth also filed two duplicate motions to open and vacate the judgment.  (ECF Nos. 90, 91.)  The Court did not act upon those motions while the appeal was pending.  On October 15, 2015, the Second Circuit issued its mandate dismissing Worth's appeal "because it lacks an arguable basis either in law or in fact."  (ECF No. 109 (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); citing 28 U.S.C. § 1915(e)).

On March 22, 2015, more than a year and a half after she removed the case to this Court, Worth filed an answer to BNYM's complaint, in which she asserted counterclaims.  (ECF No. 62.)  The Court concluded that most of the counterclaims listed in Worth's answer were related to her claim that BNYM lacked standing to bring a foreclosure action against her, which had already been addressed and rejected in the summary judgment ruling.  (ECF No. 66, at 3–4.)  The Court construed the counterclaim to raise only one previously unaddressed, cognizable claim – a trespass counterclaim, which was unrelated to the argument challenging BNYM's

standing.  (ECF No. 66.)  Given the significant delay in her presentation of the counterclaim, however, and "because Ms. Worth [] failed to make any showing as to why it could not have been asserted earlier and, in particular, before the close of discovery," the Court refused to "reopen the discovery process while the [trespass] counterclaim remains pending."  (*Id*. at 4.)

The Court later provided Worth a final opportunity to amend her "counterclaim complaint" to add any allegations relevant to the trespass claim.  (ECF No. 101.)  Worth submitted a proposed amended counterclaim complaint on July 27, 2015.  (ECF No. 102.)  After reviewing the proposed amended counterclaim complaint, the Court permitted Worth to assert the following counterclaims: (1) trespass, (2) violation of CUTPA, (3) violation of the Connecticut Consumer Protection Act and related regulations, (4) breach of the obligation of good faith and fair dealing, and (5) negligent infliction of emotional distress.  (ECF No. 105.)  In doing so, the Court reiterated that these claims could not challenge BNYM's possession of the Note and Mortgage because the Court had already entered judgment on that question.  (*Id.* at 4.) The Court refused to allow Worth's proposed claim under the Truth in Lending Act, which asserted that she had rescinded the mortgage agreement by sending a letter of rescission to BNYM, explaining that such a claim "attacks the enforceability of the Note and Mortgage."  (*Id.*) The Court invited Worth to file a second amended counterclaim complaint conforming to the Court's ruling.  She filed a second amended counterclaim on October 14, 2015.  (ECF No. 106 (the "SACC").)  The following day, the Court dismissed BNYM's then-pending motion to dismiss without prejudice, permitting BNYM to renew its motion by addressing the SACC. (ECF No. 107.)  Further, noting that the discovery period had long concluded in this case, the Court instructed the parties that they could file a dispositive motion with regard to Worth's counterclaims within 30 days.  (ECF Nos. 108.)  Both parties filed motions to dismiss.  (ECF

Nos. 110, 111.)  Neither party filed a motion for summary judgment.  On January 27, 2016, the

Court indicated to the parties that it was considering granting summary judgment on all claims

set forth in the SACC, and provided an additional 14 days for the parties to submit any evidence

not already presented to the Court that was relevant to the counterclaims.  (ECF No. 117.)

On February 6, 2016, Worth filed a motion for extension of time.  (ECF No. 118.)  With

her motion, Worth attached documents indicating that she had filed requests for documents under

the Connecticut and Federal Freedom of Information Acts.  The Court denied Worth's motion

for extension of time, explaining that the discovery period had long ago concluded in this case.

(ECF No. 119.)  The following day, Worth moved for reconsideration of that order, seeking to

reopen the discovery period.  (ECF No. 120.)  The Court denied that motion, explaining:

> In the motion to reconsider, Defendant Worth argues that additional discovery is
> needed in order to pursue her trespass and trespass-related claims because "Under
> The Truth-In-Lending Act, Worth mailed out Letter of Rescission, in multiple
> times, to BNYM and to BNYM's legal counsel," and as a result, "[r]escission was
> effectuated in October of 2014."  As this Court stated in its September 30, 2015
> Order (ECF No. 105), which specifically identified the claims she may and may
> not pursue, "Worth is not permitted to present . . . any facts or arguments relating
> to the assertion that BNYM does not hold the Note or Mortgage" because this
> Court has already ruled in favor of BNYM on that question.  For that reason, this
> Court made clear that Defendant Worth's "Truth in Lending Act claim . . . is **not
> allowed** because it attacks the enforceability of the Note and Mortgage."  An
> extension for the purpose of allowing Worth to obtain discovery relating to any
> alleged rescission is therefore not warranted.  Defendant Worth also makes
> reference to the Freedom of Information Act, a law that allows citizens to seek
> certain information from public agencies.  The Court notes that Defendant Worth,
> like any other citizen, is free to make requests under federal and state freedom of
> information laws, and she has been free to do so throughout this litigation and
> before this case was begun.  The fact that she may have freedom of information
> requests pending – over two years after this litigation was begun – is not a reason
> for the Court to reopen discovery, a process entirely independent of the freedom
> of information laws.  Defendant Worth is free to submit any documents obtained
> through any Freedom of Information Act requests within the deadline already set
> by the Court, but the fact that such requests may be pending is not a reason to
> extend that deadline, for the reasons indicated above and because she has not
> shown that any such requests seek information related to the trespass claim.  In

short, because discovery will not be reopened, the Court finds no good cause to
extend the deadline to respond to its January 27, 2016 Order.

(ECF No. 121.)  Shortly after this ruling was entered, Worth filed a motion to recuse the

undersigned and a notice of appeal.  (ECF Nos. 122, 124, 125.)  On March 1, 2016, Worth filed a

"notice" to the Court informing it of a recent California Supreme Court case, *Yvanova v. New*

*Century Mortg. Corp.*, No. S-218973, 2016 WL 639526 (Cal. Feb. 18, 2016).  (ECF No. 127.)

Worth also filed a motion to vacate certain prior orders.  (ECF No. 128.)  On March 10, 2016,

Worth filed a motion for a stay pending her most recent interlocutory appeal.  (ECF No. 129.)

The following motions are currently pending before the Court: (1) Worth's duplicate

motions to open and vacate the judgment and dismiss BNYM's foreclosure action (ECF Nos. 90,

91); (2) BNYM's motion to dismiss (ECF No. 110); (3) Worth's motion to dismiss (ECF No.

111); (4) Worth's motion to recuse (ECF No. 122); (5) Worth's motion to vacate (ECF No. 127);

and (6) Worth's motion for stay pending her appeal (ECF No. 129).

## II.   <u>Discussion</u>

### A.   **Worth's Motions to Open, Vacate, and Dismiss (ECF Nos. 90, 91, 128) and Motion to Dismiss (ECF No. 111)**

Worth asks this Court to "open and vacate" Order Nos. 50 (granting in part and denying

in part Worth's motion to compel), 58 (granting BNYM's motion for summary judgment as to

foreclosure liability and denying Worth's motion for summary judgment as to BNYM's

standing), 60 (referring BNYM's motion for strict foreclosure to Magistrate Judge Donna F.

Martinez), 61 (directing BNYM not to file a response to Worth's motion for reconsideration, per

the Court's practice "to rule on such motions in the absence of a response unless one would be

necessary or helpful"), 65 (vacating the referral of the motion for strict foreclosure), 66 (denying

Worth's motions for reconsideration), 73 (instructing parties to present evidence regarding the

original note at the strict foreclosure hearing), 77 (entering judgment of strict foreclosure), 78 (denying Worth's motions to recuse, vacate, and quash), 86 (denying motions for stay pending appeal and motion for a new trial), 101 (denying Worth leave to amend her counterclaim complaint and join additional defendants, without prejudice, because she failed to attach a proposed amended counterclaim complaint), and 105 (granting in part and denying in part Worth's motion for leave to amend her counterclaim complaint, in which the Court permitted trespass-related claims, but not claims challenging BNYM's interest in the mortgage agreement). Worth also seeks to dismiss BNYM's foreclosure action against Worth, despite the fact that judgment was entered on that claim more than ten months ago.  (*See* ECF No. 77.)  Worth has also filed a motion to dismiss, which is apparently in response to this Court's October 15, 2015 order providing BNYM 30 days to renew its motion to dismiss after it was denied without prejudice.  (*See* ECF Nos. 111 (motion to dismiss), 108 (order).)  I construe the motions to dismiss, which were filed after the Court entered judgment in favor of BNYM, as motions for relief from judgment under Fed. R. Civ. P. 60(b).

In her motions, Worth's primary contention is that she rescinded the mortgage agreement at issue in this case by sending letters of rescission to various banks under the Truth in Lending Act ("TILA").  She also argues that BNYM's counsel has engaged in fraudulent conduct by concealing evidence during discovery.

Rule 60 provides litigants an opportunity for relief from a court's judgment.  Rule 60(a) governs the process of correcting clerical mistakes made by a court.  Worth makes no suggestion that the Court has made a clerical error; Rule 60(a) therefore does not apply.  Rule 60(b) states:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a

new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

Worth does not identify under which provision of Rule 60(b) she seeks relief. Construing her arguments liberally, as this Court is obligated to do, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) ("A document filed *pro se* is to be liberally construed . . ." (citations and internal quotation marks omitted)), Worth's arguments potentially invoke Rules 60(b)(3) and 60(b)(4). The claim applicable to Rule 60(b)(3) – fraud, misrepresentation, or misconduct – is Worth's assertion that BNYM's counsel concealed evidentiary materials during discovery: "During the various motions and responses, BNYM intentionally concealed and omitted evidentiary materials and, to this date, was and has never been in compliance to F.R.C.P. 26(a), the required initial disclosure." (MTD, ECF No. 111, at ¶ 6.) Worth fails to indicate, however, what materials BNYM failed to disclose and how disclosure of those materials would have altered the Court's judgment in favor of BNYM. Worth cannot obtain relief under this provision without showing how BNYM's counsel's alleged concealment "prevented [her] from fully and fairly presenting [her] case." *State Street Bank & Trust Co. v. Inersiones Errazuriz Limitada*, 374 F.3d 158, 176 (2d Cir. 2004) (citations and internal quotation marks omitted). Without any indication of what BNYM's counsel might have concealed from Worth or this Court, or how any such concealed evidence would have affected this Court's decision to enter judgment against her, I cannot find that such alleged conduct affected Worth's ability to prevail in this case. *See, e.g.*, *Manney v. Intergroove Media GMBH*, No. 10-cv-4493 (SJF) (WDW), 2014 WL 1224171, at *5 (E.D.N.Y. March 24, 2014) ("Plaintiffs have not demonstrated that the aforementioned purported

fraud by defendants and/or defense counsel in any way affected their ability to fully and fairly seek [relief] . . .").

The claim potentially applicable to Rule 60(b)(4) – addressing "void" judgments – is Worth's primary contention: that "all jurisdiction" regarding this case is "null and avoid by operation of law[]."  (Def.'s Mtn., ECF No. 90, at 1; *see United States v. Forma*, 42 F.3d 759, 762 (2d Cir. 1994) ("[I]f there was no subject matter jurisdiction over the Formas' counterclaim then the default judgment entered against the Government is void and must be vacated, *see* Fed. R. Civ. P. 60(b)(4) . . .").)  Worth asserts that this Court lacks jurisdiction over BNYM's foreclosure action because she sent "qualified written requests and letters of resci[ssion]" to Quicken Loan Company, "CWALT, Inc. and Countrywide [] et al.," BNYM, Shellpoint Servicing, and three different letters to Mortgage Electronic Registration Systems, Inc. ("MERS"), under TILA.  (*Id.* at 2.)  Worth submitted copies of those letters to the Court.  (Def.'s MTD Exs. A-E.)  Because the mortgage agreement was rescinded, Worth argues, BNYM lacked standing to bring the foreclosure action and, as a result, this Court lacked jurisdiction over the claim.

Worth's letters of rescission had no effect on BNYM's interest in the mortgage agreement because they were untimely.  Even if the letters were substantively proper under TILA – an assertion I need not and do not address – Worth sent them after the expiration of the rescission period set forth in the statute.  TILA provides the consumer in certain financial transactions a unilateral "right of rescission."  15 U.S.C. § 1635.  "This regime grants borrowers an unconditional right to rescind for three days, after which they may rescind only if the lender failed to satisfy the Act's disclosure requirements."  *Jesinoski v. Countrywide Home Loans, Inc.*, 135 S. Ct. 790, 792 (2015).  If the lender fails to disclose the information required by TILA, the

consumer's right to rescind "shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first."  15 U.S.C. § 1635(f).

Worth signed the note and mortgage agreement on February 13, 2007.  (ECF Nos. 29-4, 29-5.)  Thus, if the lender failed to make the requisite disclosures, the latest date on which she could have submitted a letter of rescission under TILA was February 13, 2010.  Each letter referenced in Worth's motions was sent after that date: the BNYM, Shellpoint, and first and second MERS letters were sent on October 20, 2014 (Def.'s Mtn. Ex. C at 7; Ex. D at 2; Ex. E at 2), and the Quicken Loans, third MERS, and CWALT letters were sent on November 6, 2014 (Def.'s Mtn. Ex. A at 7; Ex. B at 3).  Thus, none of the letters of rescission had effect under TILA because they were all submitted more than three years after the "date of consummation of the transaction."

Because Worth fails to satisfy the required showing of fraudulent conduct by BNYM under Rule 60(b)(3) and because her claim that the judgment of strict foreclosure in this case is "void" lacks merit, Worth's Motions to Open, Vacate, and Dismiss (ECF Nos. 90, 91, 128) and Motion to Dismiss (ECF No. 111) are DENIED.

**B. BNYM's Motion to Dismiss (ECF No. 110) and Summary Judgment Ruling**

BNYM has moved to dismiss the SACC in its entirety for three reasons: (1) this Court lacks jurisdiction to address the trespass claim, (2) Worth fails to state a trespass claim, and (3) the SACC violates the instructions set forth in the Court's September 30, 2015 Order (ECF No. 66).  While I agree that Worth's submission is contrary to this Court's September 30, 2015 Order – because it makes several assertions that the BNYM lacks a valid interest in the mortgage agreement – I decline to dismiss the SACC on that basis.  With respect to BNYM's jurisdictional argument, I find that this Court possesses diversity jurisdiction over the claims set forth in the

9

SACC.  Finally, I need not address BNYM's argument that Worth fails to state a trespass claim because, as discussed below, I grant summary judgment in favor of BNYM on all counts asserted in the SACC under Fed. R. Civ. P. 56(f)(3).

### i.    Jurisdiction over Counterclaims

#### a.  Legal Standard

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. . . . In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citations and internal quotation marks omitted).

#### b.  Allegations

The SACC alleges the following facts.[1]  On August 21, 2013, BNYM initiated a foreclosure action against Worth in the Connecticut Superior Court.  (SACC ¶ 15.)  Worth removed that action to this Court on October 8, 2013.  (*Id.* at ¶ 16.)  During the hearing regarding BNYM's strict foreclosure motion, Appraiser William Esposito testified that he and another individual entered onto the property at issue, including in "secluded" areas, for the purpose of inspecting, evaluating, and taking photographs of the property without Worth's consent.  (*Id.* at

---

[1] In explaining which of Worth's counterclaims may proceed, this Court instructed Worth that she "is limited to presenting evidence to support the facts alleged related to the trespass."  (EFC No. 105, at 4.)  It further warned that "Worth is not permitted to present in support of [the trespass or related claims] any facts or arguments relating to the assertion that BNYM does not hold the Note or Mortgage."  (*Id.*)  In summarizing the facts alleged in the SACC, then, I consider only those that relate to the trespass and trespass-related claims, and omit any allegations challenging BNYM's interest in the Note or Mortgage.

¶¶ 38, 51.)  Finally, during the foreclosure process, BNYM representatives attempted to "convert" the front door lock of the house and posted a note on the front door.  (*Id.* at ¶ 40.)[2]

The counterclaim complaint asserts five causes of action: (1) trespass, (2) violation of the Connecticut Unfair Trade Practices Act ("CUTPA"),[3] (3) violation of the Connecticut Consumer Protection Act and related regulations, (4) breach of the obligation of good faith and fair dealing, and (5) negligent infliction of emotional distress.

### c.  Discussion

BNYM contends that this Court lacks jurisdiction to address the claims asserted in the SACC because none of the bases for jurisdiction asserted in the SACC apply to this case.  I disagree: Worth lists "diversity of citizenship" as a jurisdictional basis (SACC ¶ 1), and BNYM does not challenge that assertion.  The parties are diverse – Worth is a citizen of Connecticut (SACC ¶ 3) and BNYM is incorporated in New York (*id.* at ¶ 4) and its principal place of business is in Texas[4] – and Worth seeks at least $100,000 in damages (*id.* at ¶ 60).  *See* 28 U.S.C. § 1332(a).

---

[2] The remaining allegations relevant to BNYM's agents' actions on the property are conclusory.  (*See, e.g.*, ¶ 38 ("Esposito . . . testified . . . that his associate[] trespassed into and onto Worth's property . . ."); ¶ 39 ("Shellpoint Mortgage Servicing, [o]n multiple occasions, trespass[ed] in to and on to Worth's property . . ."); ¶ 40 ("BNYM and its agent(s) . . . post[ed an] offensive note on [] the front door of Worth's property. . .").)  Such conclusory allegations carry no weight in the Court's jurisdictional analysis.  *See, e.g.*, *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004) ("We may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but we may not rely on conclusory or hearsay statements contained in the affidavits."); *Pla v. Renaissance Equity Holdings, LLC*, 2013 WL 31855601 at *2 (S.D.N.Y. June 24, 2013) ("[H]ere, Plaintiffs' contention is based solely on their allegations in the Amended Complaint . . . . These conclusory allegations do not establish the existence of a justiciable controversy sufficient to survive Defendants' motion to dismiss [under Rule 12(b)(1)]." (citations omitted)).

[3] Worth also alleges, within Count Two, a violation of the Connecticut Fair Debt Collection Practices Act ("CFDCPA").  Because this allegation was not asserted in Worth's proposed second amended counterclaim complaint, she was not granted leave by the Court to submit such a claim.  *See* Fed. R. Civ. P. 15(a)(2).  As a result, I do not consider the CFDCPA counterclaim.

[4] Worth's counterclaim complaint does not indicate where BNYM's principal place of business is located, which is pertinent to whether diversity is complete.  *See* 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen . . . where it has its principal place of business . . .").  In removing the case, Worth asserted that this Court possessed diversity jurisdiction over BNYM's foreclosure action because "the Defendant is a resident of the State of

BNYM's motion to dismiss is therefore DENIED in part because this Court possesses jurisdiction over the claims asserted in the SACC.

### ii.      Merits (Summary Judgment)

In its January 27, 2016 Order, this Court provided the parties notice that it was considering granting summary judgment in favor of BNYM on all of the counts asserted in the SACC.  Because this case had been pending for over two years, discovery concluded long ago, and the parties had already submitted voluminous pleadings and evidence, the Court provided the parties an additional 14 days to submit any evidence not already presented to the Court relevant to the issue of "whether or not representatives of BNYM had authority under the mortgage agreement to enter onto the property at issue, and if so, whether the representatives' actions on the property violated the constraints on their conduct set forth in Paragraphs 7 and 9 of the mortgage agreement."  (ECF No. 117); *see* Fed. R. Civ. P. 56(f)(3).  Neither party submitted additional evidence within that period.[5]  Because the evidentiary record before the Court – compiled throughout more than 28 months of litigation – demonstrates that no reasonable juror could find in Worth's favor on any of the claims, I grant summary judgment in favor of BNYM on all counts asserted in the SACC.

### a.   Legal Standard

In order for the Court to enter summary judgment in favor of BNYM, the evidence in the record must be such that, while viewing it in the light most favorable to Worth and drawing all reasonable inferences in her favor, "there is no genuine dispute as to any material fact and [that

---

Connecticut, and the plaintiff is incorporated in the State of New York, with a principal place of business with an address of 7105 Corporate Drive, Plano, TX 75024."  (ECF No. 1, at ¶ 8.)  Upon removal, BNYM did not contest that diversity jurisdiction existed.

[5] Worth sought extensions of this period in order to obtain documents under state and federal Freedom of Information Acts.  (ECF Nos. 118, 120.)  As described above, the Court denied those motions because the discovery period had long past concluded in this case and because Worth failed to explain why she did not request the FOIA documents earlier in this litigation and how any such documents might be relevant to her claims in the SACC.

BNYM] is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004) ("[I]n assessing the record to determine whether there is a genuine issue as to a material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." (citation omitted)).  "A genuine issue of fact means that the evidence is such that a reasonable jury could return a verdict" in favor of Worth.  *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (internal quotation marks omitted).

### b.  Count One: Trespass

In Count One, Worth claims that agents of BNYM unlawfully entered onto her property, took photographs, and posted an offensive notice on her door.  She also claims that those representatives attempted to "convert" her front door lock.

In order to prevail in a claim of trespass under Connecticut law, a plaintiff must show: "(1) ownership or possessory interest in land by the plaintiff; (2) invasion, intrusion or entry by the defendant affecting the plaintiff's exclusive possessory interest; (3) done intentionally; and (4) causing direct injury."  *City of Bristol v. Tilcon Minerals, Inc.*, 284 Conn. 55, 87 (2007) (citation and internal quotation marks omitted).  The determination of whether BNYM or its agents engaged in trespass must take account of the mortgage agreement because it sets forth certain relevant rights and obligations of the parties; if Worth consented to BNYM's conduct on the property, then no trespass occurred.  *See Hanson v. Carroll*, 133 Conn. 505, 509 (1947) ("[U]nder the law of this state at least, entry on another's premises is not conclusive of trespass but may be justified, and that justification is not limited to proof of proprietary right of entry or express consent of one in possession."); *Ganim v. Bridgeport Hydraulic Co.*, No. CV-91-0282089-S, 1993 WL 541005, at *4 (Conn. Super. Ct. Dec. 21, 1993) ("Justification is a

complete defense to an action for trespass, and can be established by proof of right of entry." (citations omitted)).

Under the mortgage agreement, BNYM "or its agent may make reasonable entries upon and inspections of the Property." (Pl.'s MSJ, ECF No. 29, Ex. A-2 ¶ 7.) Further, if Worth failed to "perform the covenants and agreements contained" in the mortgage agreement, such as failing to make timely periodic payments, BNYM had authority to

> do and pay for whatever is reasonable or appropriate to protect [its] interest in the Property and rights . . . including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. . . . Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off.

(*Id.* at ¶ 9.)

Based on the evidence in the record, no reasonable juror could find in Worth's favor on the second element of a trespass claim: Worth presents no evidence that the BNYM agents invaded, intruded, or entered the property in a manner that affected Worth's exclusive property interest. As this Court noted in its summary judgment ruling with regard to BNYM's foreclosure claim, Worth does not challenge BNYM's assertion that she failed to make timely payments beginning in May of 2010. (*See* Ruling on Pl.'s Cross-Motion for Summary Judgment, ECF No. 58, at 6 ("Ms. Worth does not dispute BNYM's remaining evidence [including] that Ms. Worth defaulted on her loan . . ."); Pl.'s MSJ, Ex. 4.) As a result, BNYM had authority under the mortgage agreement to send agents to "assess," "protect," and "secur[e]" the property.

There is no evidence in the record suggesting that BNYM exceeded the bounds of "reasonable or appropriate" conduct while on the property. According to Worth, on October 22, 2014, BNYM directed appraiser Janet DeGennaro to enter onto Worth's property. (Def.'s Opp.,

ECF No. 112, at ¶ 8.)  This fact alone, as the language quoted above from the mortgage

agreement indicates, cannot amount to trespass because Worth consented to this conduct in the

event that she failed to make timely periodic payments.

Worth also asserts that BNYM representatives posted an "offensive notice" on her front

door "and committed chattel to Worth's front door lock."  (*Id.* at ¶ 9.)[6]  With respect to the notice

left on her door, Worth presents a picture of a piece of paper taped to what appears to be her

front door.  (Def.'s Opp. Ex. 1, ECF No. 112-1.)  She submitted a copy of the notice, which

states,

> NOTICE: This property has been determined to be vacant and abandoned.  The
> mortgage servicer intends to protect this property from waste and/or deterioration.
> This property may have its lock replaced and/or plumbing systems winterized in
> the next few days.  If this property is NOT VACANT and ABANDONED, please
> call MCS immediately at (888) 488-5788.  If the property is determined to be "at
> risk" the property will be secured sooner to preserve the property from further
> damage.  This is an attempt to collect a debt by the servicer, and any information
> that you provide may be used for that purpose.

(Def.'s Opp. Ex. 3, ECF No. 112-4).  Worth asserts that this notice amounts to trespass because

it is "offensive," and it "defamed and libeled" her.  (Def.'s Opp. at ¶ 8.)  This caused her

"apprehension and fear and fright," and "continue[s] to inflict [emotional distress] to the degree

[that it] cause[s] Worth insomnia[,] anguish[,] and anxiety . . ."  (*Id.* at 10.)

Worth also filed a police report after finding the notice on her door; she presented the

Court with a copy of that report.  (Def.'s Opp. Ex. 2a, ECF No. 112-2.)  The report states that a

"[pie]ce of paper had been taped to [her] door," that Worth "stated that this was upsetting

because her home is not vacant [and] she felt that this was disrespectful," and that the reporting

---

[6] It is unclear what Worth means by asserting that BNYM "committed chattel" to her front door lock.  If she intends to assert that BNYM committed "trespass to chattel," which is the act of "intentionally dispossessing another of [a] chattel, or using or intermeddling with a chattel in the possession of another," *Bowers v. United States*, 931 F. Supp. 2d 358, 370 (D. Conn. 2013) (citation omitted), her assertion fails.  There is no evidence supporting a claim that BNYM committed an act of physical interference with any chattel belonging to Worth.  If she intends to assert that BNYM changed the front door lock, that claim also fails because there is no evidence that BNYM did so.

officer "advised [Worth] to contact her bank and the court regarding this matter to seek further information." (*Id.*)  Worth also filed a supplemental police report, a copy of which she also provided to the Court.  The supplemental report states:

> [O]n 12/23/14 at approximately 02:30 Hrs., [Worth] heard the doorbell ring. When she went to look outside, she observed the [head]lights of a vehicle at the bottom of her driveway in the area of the gate.  She stated that the vehicle remained stopped for approximately one [min]ute before leaving the area. [Worth] was unable to provide details regarding the vehicle or the occupant(s).

> [Worth] reported that since her original complaint, she removed the paper that had been taped to her front door by the loan/property management [com]pany.  She replace[d] it with a letter asking people to "not trespass" on her property.  She stated that she had also sent a cease and desist letter to [rep]resentatives of the loan/property management company.

(Def.'s Opp. Ex. 2b, ECF No. 112-3.)

Assuming that these reports and all of the statements in them would be admissible evidence, I conclude that no reasonable juror could find for Worth on her trespass claim based on all the evidence in the record.  Despite Worth's claims that the notice was offensive and defamatory, it does not support a cause of action for trespass because the notice's placement on her front door did not affect Worth's possessory interest in the property.  Further, by signing the mortgage agreement, Worth provided consent to BNYM and its representatives to enter onto the property for purposes of inspection, assessment, and protection in the event that she failed to make timely payments on her mortgage.  The notice expressly advised Worth (or any other occupants) to notify the lender (or its agent) if the property was not, in fact, vacant.  It cannot be said that these actions were unreasonable or inappropriate; to the contrary, it might have been unreasonable for the representatives to fail to warn Worth of BNYM's potential subsequent actions should it later confirm that the property was abandoned.  Finally, the incident in which

someone rang Worth's doorbell cannot be attributed to BNYM because there is no evidence suggesting that those individuals were BNYM representatives or agents.

Because Worth provided consent to BNYM to enter onto the property, and there is no evidence in the record that BNYM's agents' actions exceeded the scope of that consent, Worth's trespass claim fails as a matter of law.  I enter summary judgment in favor of BNYM on Count One.

### c.  Count Two: Violation of CUTPA

Count Two alleges a violation of CUTPA, which provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Conn. Gen. Stat. § 42-110b(a).

> It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the cigarette rule by the federal trade commission for determining whether a practice is unfair: (1) [w]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory or other established concepts of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers. . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three.

*Ramirez v. Health Net of Northeast, Inc.*, 285 Conn. 1, 18–19 (2008).  Worth asserts that BNYM's actions violated CUTPA because the "natural consequences" of its actions were to "harass, oppress, or abuse" her.  (SACC ¶ 65.)  She asserts that it caused her "mental anguish, damage to reputation, and humiliation."  (*Id.* at ¶ 67.)  At the most basic level, a CUTPA claimant must show that the defendant engaged in some sort of wrongdoing.  Nothing about BNYM's actions related to the alleged trespass and supported by the evidence in the record could be considered wrongful, unfair or deceptive.  BNYM's agents did not violate the terms of

the mortgage agreement and they did not damage Worth's property.  While the Court is sympathetic to Worth's assertions that she has experienced distress as a result of the situation, she has not presented any evidence that would support a finding that BNYM or its agents engaged in conduct that violates CUTPA.  Summary judgment is entered in favor of BNYM on Count Two.

### d.   Count Three: Violation of Connecticut Consumer Protection Act and Regulations

In Count Three, Worth alleges that BNYM violated the Connecticut Consumer Protection Act ("CCPA"), Conn. Gen. Stat. § 36a-646, and certain regulations promulgated under that statute, Conn. Agencies Regs. §§ 36a-647-5 and 36a-647-6.  Because no evidence in the record supports a finding that such violations have occurred, I grant summary judgment on this count in favor of BNYM.

Conn. Gen. Stat. § 36a-646 states, "No creditor shall use any abusive, harassing, fraudulent, deceptive or misleading representation, device or practice to collect or attempt to collect any debt."  Conn. Agencies Reg. § 36a-647-5 states, "A creditor shall not engage in any conduct the natural consequence of which to a reasonable person would be to harass or abuse such person in connection with the collection of a debt.  A creditor shall not intentionally engage in any conduct which the creditor knows would harass or abuse any person."  Section 36a-647-5 sets forth illustrative examples of conduct that would violate its prohibition, such as using or threatening to use violence, using obscene or profane language, and publicly displaying information about the consumer debtor.  Finally, Conn Agencies Reg. § 36a-647-6 states, "A creditor shall not use any fraudulent, deceptive or misleading representation, device or practice in connection with the collection of any debt."  That regulation also provides a list of illustrative examples of fraudulent and misleading conduct, such as falsely representing that the creditor is

18

bonded by a governmental entity, falsely implying that an individual is an attorney, or representing that nonpayment may result in criminal prosecution.

Worth fails to supports her claims in this count with any evidence that BNYM or its agents engaged in any conduct falling within these provisions.  Because they were expressly contemplated by the mortgage agreement, BNYM's actions – entering onto the property to assess its value and leaving a notice on the front door – could not be considered or reasonably perceived as abusive, harassing, fraudulent, or misleading.  The notice BNYM's agents posted on her door did not threaten Worth in any way, nor did BNYM post it in a harassing manner, such as posting multiple notices or repeatedly posting them after they were removed.  No reasonable juror could find that BNYM's actions fit within either the CCPA's or the listed regulations' prohibitions.  For that reason, summary judgment is entered on Count Three in favor of BNYM.

### e.  Count Four: Breach of Obligation of Good Faith and Fair Dealing

Worth asserts that BNYM breached its obligation of good faith and fair dealing, which has caused her "emotional distress, anxiety, fear and fright."  (SACC ¶ 90.)  Because Worth presents no evidence that BNYM or its agents acted in bad faith, the claim fails.

"The duty of good faith and fair dealing, implied in every contract, requires that neither party do anything that will injure the right of the other to receive the benefits of the agreement. A party breaches this duty when (1) it is in a contract or contractual relationship with another party, (2) it impedes the other's right to receive benefits that he or she reasonably expected to receive under the contract, and (3) it does so in bad faith."  *Pride Acquisition, LLC v. Osagie*, No. 12-cv-639 (JCH), 2014 WL 4843688, at *13 (D. Conn. Sept. 29, 2014) (citations, internal quotation marks, and alterations omitted).  Worth fails to identify which of BNYM's actions were committed in bad faith, simply asserting that "BNYM and its agents, jointly and

individually, breached their duty of good faith and fair dealing with Worth." (SACC ¶ 88.) No evidence in the record supports a finding that BNYM or its agents engaged in any bad faith conduct, as they acted well within their authority under the mortgage agreement. Without any evidence demonstrating that BNYM or its agents acted in bad faith, Worth cannot prevail on this claim. *See Pride Acquisitions*, 2014 WL 4843688, at *13 ("Although intent is generally an issue for the jury to decide, a plaintiff is not entitled to have a claim go to the jury [on a breach of obligation of good faith and fair dealing claim] where his only support for the intent element is a bare assertion of bad faith." (citation omitted)). Summary judgment is entered in favor of BNYM on Count Four.

### f.   Count Five: Negligent Infliction of Emotional Distress

Finally, Worth asserts that BNYM negligently caused Worth to undergo emotional distress. Worth's failure to present any evidence that BNYM acted negligently is fatal to her claim, and as a result, the claim fails.

In order to prevail on a claim of negligent infliction of emotional distress, a plaintiff must show "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 444 (2003). "In order to recover on a claim of negligent infliction of emotional distress, the plaintiff must prove that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm." *McNamara v. Tournament Players Club of Conn., Inc.*, 270 Conn. 179, 197 (2004) (citation omitted).

Worth's assertions regarding this claim are unrelated to the allegations regarding BNYM's conduct on her property. Instead, they pertain to the argument, already rejected by this Court, that BNYM's foreclosure action was improper: "BNYM and its agents knew and should have known that its and their acts and conducts involved an unreasonable risk of causing emotional distress for Worth in light of the financial circumstances" (SACC ¶ 94), and "[b]y direct and proximate cause of [their] acts, Worth claims and has suffered loss of ability to obtain credit and make a living . . ." (*id.* at ¶ 97). As this Court has ruled, BNYM held a valid interest in the mortgage agreement, and Worth failed to make timely periodic payments. The foreclosure action was therefore proper. Nothing in the record suggests that BNYM's proper foreclosure action or its agents' conduct on Worth's property created an unreasonable risk of causing Worth emotional distress. While Worth may have experienced emotional distress because the foreclosure involved the loss of her home, such injury was not the result of an unreasonable risk caused by BNYM's conduct. Summary judgment is entered on Count Five in favor of BNYM.

### C. Worth's Motion to Recuse (ECF No. 112)

In her motion, Worth seeks recusal of the undersigned due to an inability to "be impartial, independent and objective" in this case. (Mtn. to Recuse, ECF No. 112, at ¶ 1.) In support of this assertion, Worth cites several instances in which the Court has ruled against her, including sustaining BNYM's discovery objections (*id.* at ¶ 4), granting summary judgment as to Worth's liability on the foreclosure claim (*id.* at ¶ 5), and refusing to reopen discovery (*id.* at ¶ 8). I note that Worth has previously filed a motion to recuse the undersigned, in which she also cited the Court's adverse rulings as evidence of partiality. (*See* ECF No. 68.)

I deny Worth's motion for the same reason her prior motion to recuse was denied: the adverse rulings and orders Worth cites are insufficient to satisfy the requisite showing of

partiality to justify recusal.  28 U.S.C. §455(a) requires that a judge recuse himself or herself "in any proceeding in which his [or her] impartiality might reasonably be questioned."  "The determination of whether such an appearance [of partiality] has been created is an objective one based on what a reasonable person knowing all the facts would conclude."  *Chase Manhattan Bank v. Affiliated FM Ins. Co.*, 343 F.3d 120, 127 (2d Cir. 2003) (citations omitted).  Worth must therefore show that "an objective, disinterested observer fully informed of the underlying facts [would] entertain significant doubt that justice would be done absent recusal. . . . [W]here the standards governing disqualification have not been met, disqualification is not optional; rather, it is prohibited."  *In re Aguinda*, 241 F.3d 194, 201 (2d Cir. 2001) (citation and internal quotation marks omitted).  Adverse rulings, without more, are almost always insufficient to make an objective showing of partiality under Section 455: "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion. . . . Almost invariably, they are proper grounds for appeal, not for recusal."  *Liteky v. United States*, 510 U.S. 540, 555 (1994).  Worth has cited no indicia of partiality in this case other than the Court's previous rulings.  *See, e.g.*, *Hunnicutt v. Kitt*, No. 3:10-cv-857 (CSH), 2011 WL 335855, at *1 (D. Conn. Jan. 31, 2011) (denying recusal because "[p]laintiff's motion is based on judicial rulings," and because plaintiff "has not demonstrated favoritism or antagonism that would render a fair judgment almost impossible").  For that reason, Worth's motion for recusal is denied.

**D.  Worth's Motion for Stay Pending Interlocutory Appeal (ECF No. 129)**

In her motion for a stay, Worth "request[s] this honorable Court to stay this operative action to its entirety pending Worth's Appeal to the United States Court of Appeals."  (ECF No. 129.)  The appeal Worth refers to in her motion is the notice of appeal she filed on February 10, 2016 (ECF No. 125), challenging the Court's order denying her motion for an extension of time

to obtain FOIA documents and submit a dispositive motion (ECF No. 119).  That appeal is premature, however, because final judgment has not been entered on her counterclaims, *see* 28 U.S.C. § 1291, and the order at issue is not one from which she may appeal without obtaining leave from this Court and the Court of Appeals, *see* 28 U.S.C. § 1292.  Because the appeal is premature, Worth's motion for stay pending the appeal is denied.  Worth will be permitted to raise the issues she seeks to pursue on appeal after final judgment is entered on all of her counterclaims.

### III.    Conclusion

For the foregoing reasons, Worth's Motions to Vacate, Open, and Dismiss (ECF Nos. 90, 91) are DENIED; Worth's Motion to Dismiss (ECF No. 111) is DENIED; BNYM's Motion to Dismiss (ECF No. 110) is DENIED in part (with respect to its argument under Fed. R. Civ. P. 12(b)(1) and assertion that the Second Amended Counterclaim Complaint is contrary to the Court's orders) and DENIED in part as moot (with respect to the argument under Fed. R. Civ. P. 12(b)(6)); Worth's Motion to Recuse (ECF No. 122) is DENIED; Worth's Motion to Vacate Orders (ECF No. 128) is DENIED; and Worth's Motion for Stay Pending Appeal (ECF No. 129) is DENIED.  Summary judgment is entered in favor of BNYM on all counts asserted in the Second Amended Counterclaim Complaint.  The Clerk is directed to close the case.


IT IS SO ORDERED.


                                            /s/
                                  _____
                                  Michael P. Shea, U.S.D.J.


Dated:          Hartford, Connecticut
                March 14, 2016